

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

801 Market Street, Suite 1300
Philadelphia, PA 19107-3127
Philadelphia Direct Dial: (215) 440-2602
TTY (215) 440-2610
FAX (215) 440-2632, 2848 & 2604
Website: www.eeoc.gov

October 29, 2015

Our References:       Collier v. TRANE COMPANY
                      Charge No. 530-2015-02036

Andre Collier
34 Boudinot Street
Trenton, NJ 08618

Dear Mr. Collier:

Action on the above-referenced charge of employment discrimination filed with this office of the U.S. Equal Employment Opportunity Commission ("EEOC") is needed. Enclosed is a copy of the Respondent's position statement for your review. Sending that response to you does not necessarily indicate that the EEOC concurs with the Respondent's position. Please review the position statement enclosed with this letter and submit your rebuttal response in writing directly to me within 15 calendar days of the date of this letter. That is, please inform us why in your opinion the position statement is not accurate or not complete and why the EEOC should therefore continue with its investigation. If you have additional relevant facts or witnesses to support your allegations, please provide this information as part of your response. *Please note that any documents which may be referenced in the response to the charge are not included as evidence cannot be disclosed until after the charge has been closed by EEOC.*

If we do not hear from you, if you do not submit any new evidence, or the evidence submitted by you cannot refute the Respondent's position statement and documentation, a recommendation for dismissal may be made without further investigation or contact with you. In that event, you will be issued a "Dismissal and Notice of Rights" which would enable you to file suit in U.S. District Court within 90 days of your receipt of that Notice.

If you need to obtain clarification, wish to engage in settlement negotiation or otherwise wish to discuss any matter associated with this charge, please do not hesitate to contact me at (215) 440-2645.

Sincerely,

Robert McMeekin
Investigator

cc:



Michael J. Thompson
**Senior Corporate Counsel –
Labor & Employment**
One Centennial Avenue
Piscataway, NJ 08855 USA
Direct Dial: (732) 652-6957
Email: Michael_j_thompson@irco.com

June 3, 2015

VIA ELECTRONIC
& OVERNIGHT MAIL

Louis Marino
U.S. Equal Employment Opportunity Commission
Philadelphia District Office
801 Market Street
Suite 1300
Philadelphia, PA 19107

RECEIVED 15 JUN 10 PM 1:18 EEOC PHILADELPHIA DISTRICT OFFICE

Re: Andre Collier v. Trane U.S. Inc.
EEOC No.: 530-2015-02036

Dear Mr. Marino:

Please accept this letter on behalf of Respondent, Trane U.S. Inc. (the "Company"), in response to the above Charge.[1] Complainant, Andre Collier ("Complainant" or "Mr. Collier"), a current Trane employee, alleges that the Company discriminated against him on the basis of his sexual orientation and is retaliating against him for filing a previous EEOC charge related to disability discrimination. As set forth more fully below, these allegations are meritless. To the contrary, there is simply no evidence that Mr. Collier has been retaliated against in any manner. Although he mentions a purported retaliatory disciplinary write-up on May 29, 2014, the Company does not have any record of that happening. With respect to the other two incidents in February 2015, the Company investigated his concerns and issued appropriate discipline to everyone involved.

I.  **FACTUAL BACKGROUND**

A.  **The Parties**

Trane U.S. Inc., a business of Ingersoll Rand, is a world leader in air conditioning systems, services and solutions. Trane units control the comfort of the air for people in

---

[1] Kindly note that this position statement is prepared solely for the Commission to assist in its investigation. It is prepared based on a good faith preliminary investigation. The Company reserves the right to modify or amend its position in the future based on additional facts or theories.

Louis Marino
June 3, 2015
Page 2

homes and many of the world's largest and most famous commercial, industrial and institutional buildings.

Complainant was hired by Trane on June 17, 1999 as an Assembler. In 2001, Mr. Collier moved into a Technician position. Mr. Collier ultimately accepted a position as a Brazer on December 2, 2013 and continues to hold that position today.

As is stated in his Charge, Mr. Collier experienced an injury in 2009 and filed a charge of disability discrimination with the New Jersey Division on Civil Rights (and the EEOC), alleging that the Company failed to properly accommodate his physical restrictions. On May 19, 2010, the EEOC issued a Right to Sue notice to Mr. Collier, but no further action was taken.

**B.     The Company's Equal Employment Opportunity Policy**

At all times, the Company maintained a stringent Equal Employment Opportunity (EEO) policy. The EEO Policy states in pertinent part:

> Ingersoll Rand provides equal employment opportunities to all employees and applicants. This means that all employment decisions, including hiring, placement, discipline, promotion, leave of absence, job assignment, compensations, transfer, layoff, recall, termination, and other terms and conditions of employment are made without regard to race, sex, color, national origin, creed, religion, pregnancy, age, disability, military/veteran status, sexual orientation, gender identity, genetic information, marital status, or any other classification protected by federal, state, or local law. (Exhibit A)

The EEO Policy also confirms the Company's commitment to complying with the Americans with Disabilities Act and to full participation in the interactive process. (Id.)

The Company also maintains a detailed harassment and discrimination reporting procedure, which provides multiple outlets for employees to raise issues of concern. Of particular importance to the present Charge, the policy also clearly prohibits any form of retaliation for raising a concern about discrimination:

> Ingersoll Rand prohibits retaliation against any employee who has filed a complaint or has participated in an investigation of a complaint. If you have filed a complaint or have participated in an investigation and you believe that you have been subjected to retaliation as a result, you MUST immediately report your complaint of retaliation as provided above. (Exhibit B)

Louis Marino
June 3, 2015
Page 3

## II. LEGAL ANALYSIS

As is explained in detail below, Mr. Collier's claims are without merit. Both before and after he filed his EEOC Charge in 2009 (which neither the EEOC nor the New Jersey Division on Civil Rights elected to pursue), the Company treated Mr. Collier with respect. Each instance of discipline which he was issued was well documented and well founded. With respect to any allegation of mistreatment he may have made, the Company investigated them and acted appropriately.

### A. Mr. Collier's Prior EEOC Charge was Dismissed

Mr. Collier previously filed a charge of discrimination in May 2009, claiming that the Company failed to accommodate a lifting restriction in violation of the ADA. As was explained by the Company at that time, Mr. Collier had been working for Trane for some time with a ten (10) pound lifting restriction. In December 2008, Mr. Collier was moved to a different shift. He did not tell his supervisor about his lifting restriction and did not assert that any medical restriction would prevent him from performing his new duties. It was only after he injured his back that he first told his supervisor about the restriction. Once notified of the injury and restriction, the Company immediately accommodated his restriction and allowed him to work light duty for three months until he was able to return to full duty. The Charge was ultimately dismissed in May 2009. The Company certainly does not hold any ill will towards Mr. Collier for having filed that Charge and is fully committed to the non-retaliation policies outlined above.

### B. Mr. Collier Has Not Received Retaliatory Disciplinary Write-Ups

Returning to the present Charge, Mr. Collier vaguely asserts that since he filed that original Charge in May 2009, he has been harassed "in the form of disciplinary write-ups, most recently on May 29, 2014." Without further information from Mr. Collier as to what these perceived retaliatory write-ups were, it is impossible for the Company to respond substantively. Moreover, the only date he does provide for one of these purported write-ups is May 29, 2014. The Company, however, has no evidence of providing a write-up to Mr. Collier on or about that date. Should Mr. Collier be able to provide additional detail about this allegation, the Company would certainly research the issue further.

In an effort to provide as full a response as possible, however, the Company has reviewed its records for any grievances that Mr. Collier may have filed through his Union. That investigation revealed the following three grievances:

- June 30, 2009 – Mr. Collier asserted that he was being held to a higher standard and was unjustly disciplined for loafing. The Company responded to that grievance by stating that the discipline was unrelated to performance and was the direct result of Mr. Collier being seen engaged in

Louis Marino
June 3, 2015
Page 4

> conversations outside of his work area during production time. The Union withdrew this grievance on October 15, 2009.
>
> - August 22, 2012 – Mr. Collier stated that he gave a grievance regarding harassment by his Production Leader to his Shop Stewart. Rather than following the regular grievance review process, he claims that Human Resources started its own investigation of the grievance. He demanded that the grievance go through the "normal" grievance step process. The Union withdrew this grievance on September 20, 2012 before the Company could respond.[2]
>
> - June 6, 2014 – Mr. Collier asserted that he was being harassed by his Production Leader and Group Leader because they asked him to wipe down some computers (while he was sweeping the floor) and because they commented on how frequently he used the restroom. The Company responded that Mr. Collier was being held to the same standards as all other employees and that if he had a medical reason for frequent use of the restroom, he should provide appropriate documentation to Nursing. The Union withdrew this grievance on July 25, 2014.

As the above demonstrates, each time Mr. Collier has been disciplined, it has been appropriate. Even more tellingly, each time he filed a grievance, his own Union ended up withdrawing them – evidencing that they were not legitimate complaints.

### C. Trane Appropriately Investigated Mr. Collier's February 2015 Complaint of Discrimination

Although Mr. Collier is not explicit about it in his Charge, the Company assumes that his reference to "two incidents of harassment on the basis of [his] sexual orientation" in February 2015 relates to an interaction he had with his co-workers in the break room. Even then, it was not Mr. Collier who reported the incident. Rather, it was one of his co-workers (Jacqueline Lynch) who brought the issue to Human Resources' (Laura Lipinski) attention. During the investigation of that claim, Mr. Collier asserted that while he was in the break room talking on his telephone, Ms. Lynch asked him if she could put her food in the microwave with his to save time. He told her that she could not. Mr. Collier then contended that in response to his refusal, Ms. Lynch said "I'm sick of these faggot motherfucker." He further stated that on another day when he was in the break room

---

[2] Notwithstanding the fact that the Union withdrew this grievance, the Company did conduct an investigation of the allegations of harassment. After multiple interviews with multiple witnesses to the alleged conduct, it was the Company's conclusion that there was no evidence of inappropriate behavior towards Mr. Collier.

Louis Marino
June 3, 2015
Page 5

again, he overheard Ms. Lynch tell another co-worker that she "used to let this nasty ass bitch use the microwave with me." Mr. Collier admittedly was upset by this comment and got involved in a verbal altercation with Ms. Lynch.

Contrary to Mr. Collier's version of the story, Ms. Lynch asserted that Mr. Collier was the one who escalated the verbal confrontation by immediately cursing and "getting in her face" when she asked about the microwave. She further claimed that Mr. Collier made comments about her lifestyle and "talked trash" about how she is bald.[3]

Through the investigation by Ms. Lipinski, she concluded that both Mr. Collier and Ms. Lynch had acted inappropriately. Both employees were therefore issued warnings for engaging in disruptive behavior. (Exhibit C) The Company is not aware of any other incidents of inappropriate language being used towards Mr. Collier.

## III.   CONCLUSION

As is detailed above, there is no evidence that Mr. Collier has experienced any kind of retaliation or discrimination. To the contrary, he has been held to the same work standards as all other employees. Moreover, with respect to the incident in the break room, the matter was immediately investigated and appropriate discipline was issued. The Company therefore asks that a finding of no probable cause be entered and that the Charge be dismissed in its entirety. If you have any questions, or require any additional information, please contact me.

Very truly yours,

Michael J. Thompson
Senior Corporate Counsel

---

[3] Ms. Lynch does wear a wig, but she is not bald.